MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace, Esq. [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOSE A. ALCANTARA, BOLIVAR
CANELA, EDWIN COLLADO, FREDDY
CRUZ, JUAN GONZALEZ, and VICTOR
GONZALEZ, *individually and on behalf of
others simiarly situated*,

                              *Plaintiffs*,

     -against-

CNA MANAGEMENT, INC, and CESAR
ABREU,

                              *Defendants*.

------------------------------------------------------X

____ CV _____

COMPLAINT

ECF Case

       Plaintiffs Jose A. Alcantara, Bolivar Canela, Edwin Collado, Freddy Cruz, Juan Gonzalez, and Victor Gonzalez, individually and on behalf of others similarly situated (collectively the "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., allege upon information and belief as follows:

### NATURE OF ACTION

    1.    Plaintiffs are current and former parking lot attendants of CNA Management Inc., and Cesar Abreu ("Defendant Abreu"), who owns and operates CNA Management, Inc.

2. Defendant CNA Management Inc., by and through its owner, operates a chain of parking lots in New York City.

3. Defendant CNA Management Inc. is owned and operated by individual Defendant Cesar Abreu, as CNA's Chief Executive Officer and/or Chairman.

4. At all times relevant to this complaint, Defendants have maintained a policy and practice of requiring their parking lot attendants to work in excess of forty (40) hours per week without providing them the minimum wage and overtime compensation required by federal and state law and regulations.

5. Plaintiffs now bring this action on behalf of themselves and other similarly situated individuals, for unpaid minimum wages and overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") § 650 *et seq.*, and the spread of hours and overtime wage orders of the New York Commissioner of Labor (the "spread of hours order" and "overtime wage order" respectively codified at 12 N.Y.C.R.R. § 142-2.2, 2.4.).

6. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

7. Plaintiffs seek further certification on behalf of themselves and a class of other similarly situated current, former, and future individuals who worked for Defendants in the state of New York, pursuant to Fed. R. Civ. Proc. 23.

- 3 -

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (interstate commerce). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

9. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of New York within this district. Defendant Corporations reside in this district and Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiff Alcantara*

10. Jose A. Alcantara ("Plaintiff Alcantara" or "Mr. Alcantara") is an adult individual residing in New York County, New York.

11. Plaintiff Alcantara was employed by Defendants from approximately 1998 through August 31, 2007, initially as a parking lot attendant, and in his last 9 years, as a parking lot attendant and supervisor. His additional duties included dealing with unhappy clients, keeping track of employee attendance and timeliness, and covering shifts for missing / absent employees. Mr. Alacantara also performed minor maintenance duties such as painting, fixing gates, and repairing minor electrical and mechanical problems.

12. Plaintiff Alcantara regularly worked in excess of 70 hours a week.

13. Initially, from December 2001 through in or about the month of November 2004, Alcantara worked a shift from 7:00 p.m. until 7:00 a.m., six days a week.

14. During this period, Plainitff Alcantara worked primarily in the 1150 W. 167th Street parking lot location.

15. During this period, Plaintiff Alcantara was paid by check and cash.

16. From in or about November 2004, through August 31, 2007, Plaintiff Alcantara worked from 7:00 p.m. through 7:00 a.m., seven days a week.

17. During this period, Plaintiff Alcantara worked at several locations, including 1150 W. 167th Street, Taino Garage (located at 122nd Street between 2nd and 3rd Ave., 225 West 121st Street (located at St. Nicholas), 2010 10th Avenue (located at 203rd Street), and another location at Westchester Avenue.

*Plaintiff Canela*

18. Plaintiff Bolivar Canela ("Plaintiff Canela" or "Mr. Canela") is an adult individual residing in New York County, New York.

19. Plaintiff Canela was employed by Defendants from approximately July 2002 through February 2006, and for another period of time from January 2007 through July 2007, as a parking lot attendant.

20. Initially, from approximately July 2002 until February 2006, Plaintiff Canela worked at a garage within Taino Towers, located at 122 St between 2 and 3 Avenues.

21. During this period, Plaintiff Canela worked a 12 hour shift from 7:00 p.m. to 7:00 a.m., 7 days a week.

22. During this period, Mr. Canela was paid by check and cash.

23. Mr. Canela, after leaving defendants' employment in or about February 2006, returned to work for Defendants from January 2007 through July 2007.

24. During this period Mr. Canela worked again in the Taino Towers garage.

25. During this period Mr. Canela worked a shift from 3:00 p.m. to 11:00 p.m., 4 or 5 days a week.

26. During this period Mr. Canela was paid by check.

*Plaintiff Collado*

27. Plaintiff Edwin Collado ("Plaintiff Collado" or "Mr. Collado") is an adult individual residing in New York County, New York.

28. Plaintiff Collado was employed by Defendants from approximately October 2003 through June 2005 as a parking lot attendant.

29. Initially, from October 2003 through February 2005, Mr. Collado worked at a garage located at 2010 10th Ave in 12 hour shifts from 7:00 p.m. through 7:00 a.m.

30. During this period, Mr. Collado was paid by check and cash.

31. Mr. Collado then worked for defendants from February 2005 through June 2005 at various different garage locations, including 1150 W. 167 St. and 2010 Westchester Ave.

32. During this period, Mr. Collado worked a 12 hour shift, 6 days a week, from 7:00 a.m. through 7:00 p.m.

33. During this period Mr. Collado was paid by check and cash.

*Plaintiff Cruz*

34. Plaintiff Freddy Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Bronx County, New York.

35. Plaintiff Cruz was employed by Defendants from approximately October 2002 through June 2005 as a parking lot attendant.

36. Mr. Cruz initially worked from October 2002 through January 2005 at garages located at 1150 w. 167 St, 225 W. 121 St., and 122nd St. between 2 and 3rd Ave;

37.  During this period Mr. Cruz worked daily 12 hours shifts, from 7:00 p.m. to 7:00 a.m., six days a week.

38.  During this period Defendants paid Mr. Cruz with cash.

39.  From approximately January 2005 through August 2005, Mr. Cruz worked at a garage located at 1150 W. 167th St.

40.  During this period Mr. Cruz again worked 12 hour shifts, from 7:00 a.m. through 7:00 p.m., 6 days a week.

41.  During this period, defendants paid Mr. Cruz with cash.

42.  Mr. Cruz also received only $4.15 an hour for his work.

43.  Upon information and belief, Defendants maintained a cash receipt record where they recorded their payments to Mr. Cruz. However, Defendants recorded the payments under "Chico," instead of indicating that the cash payments were for wages to Freddy Cruz.

44.  The cash payments were then given to Mr. Cruz in an envelope that was time stamped.

*Plaintiff Juan Gonzalez*

45.  Plaintiff Juan Gonzalez is an adult individual residing in Inwood, New York.

46.  Plaintiff Juan Gonzalez was employed by Defendants from approximately May 2002 through June 2005 as a parking lot attendant.

47.  Initially, from May 2002 through August 2002, Juan Gonzalez worked at the garage located in Tahino Towers at 122 St between 2nd and 3rd Avenues.

48.  During this period, Juan Gonzalez worked a 12 hour shift from 7:00 p.m. through 7:00 a.m., 6 days a week.

49.  During this period, Juan Gonzalez was paid by check and cash.

50. From August 2002 through June 2005, Juan Gonzalez worked at a garage located at 225 W. 121st St.

51. During this period, Juan Gonzalez worked daily 12 hour shifts from 7:00 a.m. to 7:00 p.m., six days a week.

52. During this period, Juan Gonzalez was paid by check and cash.

*Plaintiff Victor Gonzalez*

53. Plaintiff Victor Gonzalez is an adult individual residing in New York, New York.

54. Plaintiff Victor Gonzalez was employed by Defendants from approximately April 2004 through October 2005 as a parking lot attendant.

55. During this period, Victor Gonzalez worked for Defendants at several garages, including garages located at 122nd St. and St. Nicholas, 122 St and 2nd Ave., 1150 W. 167 St., 1080 Westchestester Ave., and 3795 10th Avenue.

56. Victor Gonzalez worked 12 hours shifts, from either 7:00 a.m. to 7:00 p.m., or from 7:00 pm to 7:00 am, 6 days a week.

57. Victor Gonzalez was paid by check and cash.

58. Defendants deducted six hours a week from Victor Gonzalez's pay for breaks that he did not receive.

59. Defendants also deducted amounts from Victor Gonzalez's pay for damages to automobiles incurred during Victor Gonzalez's shifts, often in amounts from $100-$225, and once for $350.

*Defendants*

60. Defendant CNA Management, Inc. ("CNA" or the "defendant corporation") is a corporation organized and existing under the laws of the State of New York. CNA operates

parking lots and maintains its principal business office at 3795 Tenth Avenue, New York, NY 10034.

61. Defendant CNA controls and/or operates several parking lots and garages, including the following locations:

    (1) 1150 Webster Avenue, Bronx, NY (and E. 167th Street);

    (2) 221 East 122 St., New York, NY (between 2nd & 3rd Avenues) ("Taino Towers Garage");

    (3) 225 W. 121st Street, New York, NY (and St. Nicholas Ave.);

    (4) 3795 Tenth Avenue, New York, NY;

    (5) 2010 Westchester Ave., Bronx, NY;

    (6) 222 West 121st Street, New York, NY;

    (7) 1080 Westchester Ave., Bronx, NY; and

    (8) 203rd Street and 10th Ave., Bronx, NY.

62. Defendant Cesar Abreu ("Defendant Abreu") is an individual engaged in business in the City and County of New York. Defendant Abreu, who is sued individually in his capacity as an owner, officer and/or agent of CNA, possesses operational control over CNA, possess an ownership interest in CNA, controls significant functions of CNA, determines the wages of the parking lot attendants, and makes hiring/firing decisions. Upon information and belief, Defendant Cesar Abreu resides at 561 Abbott Avenue, Ridgefield, New Jersey.

STATEMENT OF FACTS

*Defendant Corporations Constitute Joint Employers*

63. CNA is a corporations owned, controlled, and operated by Defendant Abreu.

64. CNA and Abreu (collectively the "Defendants") are associated and joint employers, utilizing Plaintiffs in a fungible and interchangeable manner as parking lot attendants between the parking lots operated by Defendants.

65. Upon information and belief, Defendant Abreu is the owners and/or executive directors of CNA.

66. At all relevant times, Defendant Abreu employed and/or jointly employed the Plaintiffs.

67. The gross annual volume of sales made or business done by CNA, for each year in existence, was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

68. At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

*Defendants' General Compensation and Employment Practices*

69. At all times relevant to this action, Plaintiffs worked as attendants in parking lots owned and/or operated by Defendants. As such, Plaintiffs' work was involved with or related to the movement of goods for interstate commerce.

70. Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week and more than ten (10) hours a day without paying them the proper regular rate of pay, overtime wages, or spread of hour compensation.

71. Plaintiffs were paid at or below the minimum wage. As detailed below, Defendants' pay practices resulted in Plaintiffs not receiving payment of all of their hours, so their effective rate of pay was reduced below the minimum wage.

72. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York State Labor Law by failing to maintain proper and complete timesheets or payroll records.

73. For example, Defendants usually paid Plaintiffs with either a combination of check and cash, or entirely in cash.

74. Upon information and belief, this was done so to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

75. Although Plaintiffs regularly worked 72 or more hours per week, their pay checks only reflected a fraction of their actual hours worked.

76. Generally the paychecks reflected 40 hours of work a week, with a small number of "overtime" hours at time and a half. Plaintiffs actually worked well in excess of the small number of overtime hours reported on the paychecks.

77. Since the paychecks were not accurate, Defendants failed to provide Plaintiffs with an accurate indication as to their rate of pay, daily hours worked, or total hours worked each week for the full amount of weekly hours.

78. Defendants did not pay Plaintiffs for their full time worked.

79. Defendants did not pay Plaintiffs additional overtime pay beyond the occasional few hours placed on their paychecks.

80. Rather, Defendants paid Plaintiffs in cash for only a portion of the hours worked over 40 a week, without paying for all the hours, or paying Plaintiffs their time and a half due in overtime.

81. As such, Plaintiffs were not properly paid for their work or for overtime. This practice also evaded the spread of hours pay as it usually reduced the reported hours below 10 hours a day.

82. Upon information and belief, the cash payments to employees were recorded in receipt form.

83. In addition, Plaintiffs could not leave the parking lot unattended and as a result, were required to work their entire 12-hour shifts without receiving a meal break.

84. Defendants denied Plaintiffs time off for meals and breaks in violation of New York State Labor Law § 162.2. Plaintiffs received neither a thirty-minute break for lunch, nor an additional 20 minute break between 5 P.M. and 7 P.M. for those employed on a shift starting before 11 A.M. and continuing after 7 P.M.

85. At no time during their employment did Plaintiffs ever observe on Defendants' premises any posted notice regarding employees' rights under the Fair Labor Standards Act, New York State Labor Law and Regulations or the procedures for filing a charge for violations of these state and federal labor laws.

86. Defendants regularly deducted meal and break time from Plaintiffs' hours worked, despite not granting Plaintiffs any meal or break time.

87. Defendants also improperly deducted amounts from Plaintiffs' pay to offset damages to vehicles that occurred during Plaintiffs' shifts.

88. These deductions could amount to hundreds of dollars and were often deducted over several weeks until the entire amount of the damage was recouped from Plaintiffs' wages.

89. Upon information and belief, these deductions were recorded in receipt form, or in handwritten notations.

## FLSA COLLECTIVE ACTION CLAIMS

90. On information and belief, there are over 15 current and former employees that are similarly situated to Plaintiffs who have been denied minimum wage and overtime compensation while working for Defendants.

91. The named Plaintiffs are representative of these other parking lot attendants who work for Defendants and are acting on behalf of their interests as well as their own interest in bringing this action.

92. Similarly situated former and current employees are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

93. Unless the Court promptly issues such notice, persons similarly situated to Plaintiffs, who have been unlawfully deprived of minimum wage and overtime pay in violation of the Fair Labor Standards Act, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by Defendants.

## FEDERAL RULE OF CIVIL PROCEDURE RULE 23 CLASS ALLEGATIONS

94. Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

95. Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the state of New York, on or after the date that is six years before the filing of the complaint in this case, August 2001, to entry of judgment in this case (the "New York Class Period"), as travel agency or money wire employees. All said persons, including Plaintiffs, are referred to herein as the "New York Class."

96. The persons in the New York Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately 100 members of the New York Class during the New York Class Period. There are questions of law and fact common to the Class which predominate over any questions affecting only individual members. The claims of the representative parties are typical of the claims of the class.

97. The representative parties will fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

98. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

99. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

100. The claims of Plaintiffs are typical of those of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the Named Plaintiffs were and are typical of those of class members.

101. There are questions of law and fact common to the New York Class which predominate over any questions solely affecting individual members of the Class, including:

   a. what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

   b. what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

   c. what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

   d. whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

   e. whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

   f. at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

    g. common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

### FIRST CAUSE OF ACTION
### Minimum Wage Act Under the FLSA

102. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

103. At all times relevant to this action, Plaintiffs were engaged in interstate commerce in an industry or activity affecting commerce.

104. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

105. CNA constitutes an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

106. Defendants willfully failed to pay Plaintiffs at the applicable minimum hourly rate in violation of 29 U.S.C. §§ 206(a) and 255(a).

107. Plaintiffs have been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### Overtime Wage Order Under the FLSA

108. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

109. Defendants willfully failed to pay Plaintiffs pursuant to the overtime wage order at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek, in violation of 29 U.S.C. §§ 207(a)(1) and 255(a).

110.   Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Minimum Wage Act Under the NYLL

111.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

112.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

113.   Defendants knowingly paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

114.   Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

115.   Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Overtime Wage Order Under the NYSLL

116.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

117.   Defendants willfully failed to pay Plaintiffs overtime at the rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek, in violation of NYLL § 190 *et seq.* and regulations of the New York State Department of Labor.

118.   Defendants' failure to pay Plaintiffs overtime was willful within the meaning of NYLL § 663.

119.   Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Spread of Hours Wage Order

120. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

121. Defendants failed to pay Plaintiffs one additional hour's pay at the minimum wage rate for each day Plaintiffs worked more than ten hours in violation of the Spread of Hours Wage Order.

122. Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs in excess of ten hours was willful within the meaning of NYLL § 663.

123. Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

A. Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

B. Designating this action as a class action under Rule 23 of the Federal Rules of Civil Procedure pursuant to Rule 23 to all putative class members for applicable claims under New York Labor Law;

C. Declaring that Defendants have violated the minimum wage orders of the FLSA and NYLL, as to Plaintiffs;

D. Declaring that Defendants have violated the overtime wage orders of the FLSA and NYLL, as to Plaintiffs;

E. Declaring that Defendants' violation of the FLSA and NYLL were willful, as to Plaintiffs;

F. Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor;

G. Declaring that Defendants' violations of the FLSA and New York Labor Law were willful;

H. Awarding Plaintiffs and the punitive class members damages for the amount of unpaid minimum and overtime wages, as well as spread of hours pay under the FLSA and NYLL;

I. Awarding Plaintiffs and the punitive class members liquidated damages in an amount equal to minimum and overtime wage orders, as well as the spread of hours pay pursuant to 29 U.S.C. § 216(b);

J. Awarding Plaintiffs and the punitive class liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663;

K. Awarding Plaintiffs and the punitive class prejudgment interest;

L. Awarding Plaintiffs and the punitive class members the expenses incurred in this action, including costs and attorney's fees; and

M. Awarding Plaintiffs and the punitive class members liquidated damages in an amount equal to minimum and overtime wage orders, as well as the spread of hours pay pursuant to 29 U.S.C. § 216(b);

N. Awarding Plaintiffs and the punitive class liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and

overtime compensation shown to be owed pursuant to NYLL § 663;

O. Awarding Plaintiffs and the punitive class prejudgment interest;

P. Awarding Plaintiffs and the punitive class members the expenses incurred in this action, including costs and attorney's fees; and

For such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 28, 2007

            MICHAEL FAILLACE & ASSOCIATES, P.C.

            By: /s/ Michael Faillace
            Michael A. Faillace, Esq. [MF-8436]
            110 East 59th Street, 32nd Floor
            New York, New York 10022
            (212) 317-1200
            *Attorneys for Plaintiffs*